## JAMES BULL *et al. versus* ELI LOVELAND.

A witness is bound to answer a question in a matter pertinent to the issue, where his answer will not expose him to criminal prosecution, or tend to subject him to a penalty or forfeiture, although it may otherwise adversely affect his pecuniary interest.

So a witness may be compelled, under a *subpœna duces tecum*, to produce a document in his possession, unless he has a lawful or reasonable excuse for withholding it, although the production of it will adversely affect his pecuniary interest.

Of the lawfulness or reasonableness of such excuse, the court and not the witness is to judge.

In an action upon a promissory note, a witness served by the plaintiff with a' *subpœna duces tecum* to produce the note, testified that the defendant, a mechanic, assigned his property to the witness, who was a creditor, and that the plaintiff and the other creditors put their demands, including the note in question, into the hands of the witness for collection, under an agreement that he might furnish stock to the defendant to work up for the benefit of the creditors, and that the proceeds of all the property should be applied first to the repayment of the advances made by the witness, and the surplus to the payment of the demands, and that a large sum was due to the witness on account of his advances. *Held,* that he was not bound to produce the note for the purpose of sustaining the action.

*Held,* also, that as no period was specified for the continuance of the witness's agency, a reasonable time must be allowed, and that a creditor must be considered as acquiescing in the time taken by the agent, unless he gave notice to him to hasten the collection of the demands.

*Held,* also, that a creditor could not secure his own demand by attaching the property, without first giving notice to the other creditors and putting them in the same situation which they were in before the agreement was made.

ASSUMPSIT upon a promissory note, dated September 22d, 1823, for \$257·78, payable to Bull & Clark, the plaintiffs.

The plaintiffs had served a *subpœna duces tecum* upon D. S. Whitney, one of the firm of Tappan & Whitney, requiring him to produce the note.·

At the trial, before *Wilde* J., Whitney admitted that he had the note in his hands, but he declined producing it unless by order of court. He testified that it came into his possession under the following circumstances. In September 1823, Loveland, who was a cabinet-maker, being indebted to Tappan & Whitney, J. D. Whitney, J. D. & A. Whitney, and Bull & Clark, made an assignment to them of his property, with an agreement that the stock in his shop should be worked up by him under their direction, and that the whole property should be applied to the payment of their claims, which were to be paid in full, if the property should be sufficient for that purpose,

or ratably, if not. In November 1823, the assignees being desirous of sustaining Loveland in business, and other creditors having no security for their demands, the assignees offered to allow the other creditors to participate in the benefits of the assignment, if they would place their demands entirely under the control of the assignees ; which proposal was accepted. At that time the three firms of Tappan & Whitney, J. D. & A. Whitney, and Bull & Clark, held the whole property ; but it was then agreed, (Bull & Clark acting principally by Clark,) that all the claims should be put into the hands and under the control of Tappan & Whitney as the agents of the three firms, and that they should manage the business in the best manner they could for the benefit of all concerned. It was soon afterwards agreed that the necessary purchases should be made, and that the debts thus contracted should be first paid, and the old debts, as fast as should be convenient. Under this agreement Tappan & Whitney have ever since acted as the agents of the creditors, advancing from time to time the necessary capital, and Loveland has continued to transact business in the same manner as before the assignment, subject to the control of the agents. The situation of the whole concern has been constantly known to each of the three firms before mentioned, and the agents have uniformly asked the advice of some members of the other firms, in case of any doubt or difficulty. The debts of some of the smaller creditors have been paid, and two dividends have been made among the assignees and other creditors ; the first dividend paid to Bull & Clark, on January 10th, 1825, amounting to $30, and the second, paid to them on November 4th, 1825, amounting to the same sum. The agents have made the necessary advances in the transaction of the business, with full confidence that no creditor was entitled to withdraw his demand and by an attachment of the property deprive them of their security for the advances so made, without at least first requesting them to bring the business to a close and allowing them reasonable time for that purpose. No such request has ever been made, and no demand was made for the note, until after the commencement of this action. The original demand of Tappan & Whitney was $339·97, and the debt due to them for advances amounted, at the time when the

action was commenced, to about $ 1500. The property attached in this action was either embraced by the assignment, or had been purchased since, in pursuance of the arrangements above mentioned.

The question, whether the witness ought to be compelled to produce the note, was reserved for the consideration of the whole Court, the parties agreeing, that if he ought to have been compelled to produce it, the defendant should be defaulted; otherwise, that the plaintiffs should become nonsuit.

*Forbes*, for the plaintiff. To justify the non-production of the note, the witness must prove that he has a rightful control of it, or an interest in it as regards the event of this suit. It was placed in his hands as an agent of the three firms, but he has unreasonably neglected to collect even the interest due upon it, and for this reason he has no right, either legal or equitable, to retain the control of it. Nor has he any direct interest in the note; and he can be indirectly interested, only because the plaintiff's execution may by possibility exhaust the defendant's funds. This will not excuse him from producing the note. 1 Phil. Ev. 335; *Devoll* v. *Brownell*, 5 Pick. 448; 1 Stark. Ev. 135; *Stoddard's Lessee* v. *Manning*, 2 Har. & Gill, 147; 3 Stark. Ev. 1721; *Reed* v. *James*, 1 Stark. Rep. 132; 2 Powell on Mortg. (by Rand), 633 *a*. Trover would lie for the note; the legal right to it is in the plaintiff. Unless the witness may be compelled to produce the note, he may deprive the plaintiff of his remedy against the defendant, so long as the defendant shall remain in the slightest degree indebted to the witness.

*L. Strong*, *contrà*, contended that in this Commonwealth a witness is not obliged to testify against his own pecuniary interest. Peake's Ev. (3d ed.) 168, 194, cites *St.* 46 *Geo.* 3, c. 37; 1 Hall's Law Journ. 223; *United States* v. *Grundy*, 3 Cranch, 343; *Webster* v. *Lee*, 5 Mass. R. 334; *Appleton* v. *Boyd*, 7 Mass. R. 131. A witness attending under a *subpœna duces tecum* is not bound to produce a paper against his interest, any more than he is to testify against his interest. *Miles* v. *Dawson*, 1 Esp. R. 405; *Amey* v. *Long*, 9 East, 473; *Corsen* v. *Dubois*, 1 Holt's N. P. R. 239; 3 Stark. Ev. 1722, 1724. The production of the note in question

Bull
*v.*
Loveland.

*Sept.* 28*th.*

12

would be prejudicial to the interest of the witness, and of course he was not compellable to produce it.

SHAW C. J. delivered the opinion of the Court. In this case, the general question has been argued at some length, whether a witness, without his own consent, can be called to testify to any fact pertinent to the issue between other parties, where such testimony may tend to charge him with a debt, or subject him to pecuniary loss or liability, but where it does not tend to expose him to punishment, or subject him to any penalty or forfeiture.

This question has been the subject of much discussion and difference of opinion, among eminent judges, and those of the greatest experience in nisi prius trials, both in England and in the United States.

In the case of *United States* v. *Grundy*, 3 Cranch, 344, it seemed to be taken for granted by *Marshall* C. J., that a man in a civil case is not bound to testify against his interest. But that was before the discussions in England, and the opinions of the judges in the House of Lords, growing out of questions raised in Lord Melville's trial. Besides, the question was not argued, and it arose where the witness was called to testify to a fact which would have rendered a ship forfeited under the registry acts of the United States, in which, at the time of the forfeiture, he himself claimed an interest.

In *Webster* v. *Lee*, 5 Mass. R. 334, it was stated by *Parsons* C. J., in giving the opinion of the Court, that a witness may, *if he consents*, testify against his own interest. Although this expression implied that his consent was requisite, yet the case did not call for the expression of an opinion upon the question whether he could be compulsorily required to testify, against his will.

In a later case however, *Appleton* v. *Boyd*, 7 Mass. R. 131, the same point again came before the same eminent judge at nisi prius, upon which he ruled that a witness cannot be required, without his consent, to testify against his own pecuniary interest. This point among others was reserved, but it was not argued or noticed by the counsel on either side. In giving the opinion the Court cited no authority; and in noticing this point, seemed to take the rule for granted, and considered

rather, whether from the facts reported, the witness had an interest in the question, than whether by law it would excuse him from giving his testimony.

In England this subject underwent much discussion, pending the impeachment against Lord Melville, in 1806, upon which occasion the question was put to the judges by the House of Lords. The question was presented in two or three different forms, slightly varying in terms, but it was substantially the same in each. Eight judges and the chancellor were of opinion, that the witness was bound to answer a question, although his answer might render him liable to a civil action ; the other four judges expressed a contrary opinion. In order to remove the doubts, which such a difference of opinion among eminent judges implied, an act was passed, 46 *Geo.* 3, *c.* 37, declaring, that a witness cannot by law refuse to answer a question relevant to the matter in issue, the answering of which has no tendency to accuse himself, or to expose him to a penalty or forfeiture of any nature whatsoever, by reason only, or on the sole ground, that the answering of such question may establish or tend to establish, that he owes a debt, or is otherwise subject to a civil suit.

This act, as a statute, of course has no authority here, but as strictly a declaratory law it is entitled to weight. Lord *Erskine*, then lord chancellor, stated, that notwithstanding some difference of opinion among high authorities, he considered the law so far precise, clear and conspicuous that it was necessary no new law should be promulgated, otherwise than in the form of a declaratory law. In this suggestion he was countenanced by Lord *Eldon*, who was not then in judicial office. 1 Phil. Ev. (Am. ed.) 208 ; Peake's Ev. (3d ed.) 193 ; 1 Hall's Law Journal, 223 ; 1 Stark. Ev. 135.

This rule has recently been recognised and acted on in Maryland. *Taney* v. *Kemp*, 4 Har. & Johns. 348 ; *Stoddart* v. *Manning*, 2 Har. & Gill, 147. And in Pennsylvania. *Baird* v. *Cochran*, 4 Serg. & Rawle, 397.

In a recent case in this Court, it has been held, that one summoned as trustee, cannot avoid answering questions put to him, in regard to the validity of a conveyance under which he claims title to property, on the ground that it may affect his

14

own pecuniary interest. *Devoll* v. *Brownell*, 5 Pick. 448. This is not precisely in point, but it is important as giving a construction to a constitutional provision, which might be supposed to stand in the way of the application of the rule in question in this Commonwealth. The provision is found in the 12th art. of the Declaration of Rights. "No subject shall be held to answer for any crime, &c. or be compelled to accuse, or furnish evidence against himself." In this case it was decided, that the trustee was bound to answer, though he might thereby charge himself, and that the above constitutional provision does not relate to questions of property.

On the whole we think the weight of authority is in favor of the rule, that a witness may be called and examined in a matter pertinent to the issue, where his answers will not expose him to criminal prosecution, or tend to subject him to a penalty or forfeiture, although they may otherwise adversely affect his pecuniary interest, and that the witness was properly called and examined in the present case.[1]

There seems to be no difference in principle, between compelling a witness to produce a document in his possession, under a *subpœna duces tecum*, in a case where the party calling the witness has a right to the use of such document, and compelling him to give testimony, when the facts lie in his own knowledge. It has been decided, though it was formerly doubted, that a *subpœna duces tecum* is a writ of compulsory obligation, which the court has power to issue, and which the witness is bound to obey, and which will be enforced by proper process to compel the production of the paper, when the witness has no lawful or reasonable excuse for withholding it. *Amey* v. *Long*, 9 East, 473; *Corsen* v. *Dubois*, 1 Holt's N. P. R. 239. But of such lawful or reasonable excuse the court at nisi prius, and not the witness, is to judge. And when the witness has the paper ready to produce, in obedience to the summons, but claims to retain it on the ground of legal or

---

[1] See *Commonwealth* v. *Willard*, 22 Pick. 477; *Faunce* v. *Gray*, 21 Pick 245, 246; *Copp* v. *Upham*, 3 N. Hamp. R. 159; *Nass* v. *Van Swearingen*, 7 Serg. & Rawle, 192; *Planters' Bank* v. *George*, 6 Martin, 679; *Mauran* v. *Lamb*, 7 Cowen, 174; *Benjamin* v. *Hathaway*, 3 Connect. R. 525, Roscoe's Crim. Ev. (Am. ed.) 129, note 1.

equitable interests of his own, it is a question to the discretion of the court, under the circumstances of the case, whether the witness ought to produce, or is entitled to withhold the paper.

Under the circumstances of the present case, we are clearly of opinion that the witness had such an equitable interest in the note, and such a right to the custody and control of it, under the agreement of the plaintiff himself, that he ought not to have been required to surrender it for the purpose proposed, that of maintaining the suit and thereby fixing a lien by attachment, upon the funds placed in the hands of the witness for the common benefit of all the creditors. Upon the faith of this agreement, all the creditors, including the plaintiffs, restrained themselves from securing their respective debts by attachment ; and relying on the same agreement, the witness made considerable advances for the improvement of the trust fund, for the common benefit. When the plaintiffs and other creditors constituted Tappan & Whitney their agents to collect all the demands, including their own, and placed their notes and securities in the hands of these agents for that purpose, with power by attachment or otherwise to apply the whole of the debtor's funds for that purpose, they created not a mere naked agency, but gave an authority coupled with an interest, which could not be revoked at their mere pleasure.

If it be asked how long this agency is to continue, it may be answered, a reasonable time ; and what is a reasonable time must depend upon the circumstances of the case. Here it has not been shown that the witness and his partner, intrusted with the transaction of this business, have violated their agreement, or abused their trust; no application has been made to them to accelerate the collection of the demands ; and this afforded evidence of a tacit acquiescence on the part of the plaintiffs, in the course pursued by them. If it was in the power of the plaintiffs to rescind the agreement, revoke the authority given, and claim their note for the purpose of being put in suit, they ought at least to give reasonable notice of their intention so to do, in order that the other creditors might be put in the same situation, which they were in before the agreement was made.[1]       *Plaintiffs nonsuit.*

---

[1] See *Walker* v. *Russell,* 17 Pick. 280.